Katherine I. Hartley (Bar No. 11837)
PACIFIC JUSTICE INSTITUTE
P.O. Box 2131
Coeur D'Alene, Idaho 83816
Office: 858-945-6924
khartley@pji.org

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

TRUTH FAMILY BIBLE CHURCH MIDDLETON,

Plaintiff,

v.

IDAHO HOUSING AND FINANCE ASSOCIATION, an Idaho nonprofit corporation, SAGE INTERNATIONAL NETWORK OF SCHOOLS, an Idaho public charter school,

Defendants,

Case No.: 1:24-cv-00206-DCN

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

MOTION FOR SUMMARY JUDGMENT ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

UNDISPUTED AND STIPULATED FACTS MATERIAL TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ........ 2

I. The Parties and the Plaintiff Church's Lease Agreement ........ 2

II. Applicable Idaho State Law ........ 2

III. Lease Termination ........ 2

STANDARD OF REVIEW ........ 3

LEGAL ARGUMENT ........ 3

I. Excluding a church from renting a public facility violates the Free Exercise Clause ........ 4

II. Favoring non-churches over a church violates the Establishment Clause ........ 7

III. Excluding a church is viewpoint discrimination in violating of the Free Speech Clause ........ 8

CONCLUSION ........ 9

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................3

*Carson v. Makin*,
596 U.S. 767 (2022)....................6

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993)....................5, 6

*Espinoza v. Mont. Dep't of Revenue*,
591 U.S. 464 (2020)....................4, 5, 6, 7

*Everson v. Bd. of Educ.*,
330 U.S. 1 (1947)....................7

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
82 F.4th 664 (2023)....................4

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022)....................7, 8

*Lamb's Chapel v. Center Moriches Sch. Dist.*,
508 U.S. 384 (1993)....................8

*Loffman v. California Dep't of Educ.*,
No. 23-55714, 2024 WL 4586970 (9th Cir. Oct. 28, 2024)....................6

*Masterpiece Cakeshop Ltd. v. Colo. Civil Rights Comm.*,
584 U.S. 617 (2018)....................5

*Mitchell v. Helms*,
530 U.S. 793 (2000)....................5

*Rosenberger v. Rector and Visitors of Univ. of Virginia*,
515 U.S. 819 (1995)....................8, 9

*Sherbert v. Verner*,
374 U.S. 398 (1963)....................4

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
582 U.S. 449 (2017)....................4, 5, 6

*Widmar v. Vincent*,
454 U.S. 263 (1981) .......... 7, 8

*Zelman v. Simmons-Harris*,
536 U.S. 639 (2002) .......... 7

**CONSTITUTIONS, STATUTES, AND RULES**

U.S. Const. amend. I .......... 3, 4, 6, 8, 9

U.S. Const. amend. XIV .......... 3

Idaho Const. art. IX, § 5 .......... 1, 3

Fed. R. Civ. P. 56 .......... 3

Fed. R. Civ. P. 56(a) .......... 1

Fed. R. Civ. P. 56(c) .......... 4

Idaho Code § 33-5204 .......... 2

Idaho Code § 33-5218(1) .......... 2

Idaho Code § 33-5218(2) .......... 2

Idaho Code § 67-6201-6227 .......... 2

**OTHER AUTHORITIES**

Jeffries & Ryan, A Political History of the Establishment Clause,
100 Mich. L. Rev. 279, 301–305 (2001) .......... 5

P. Hamburger, Separation of Church and State 391-454 (2002) .......... 7

## MOTION FOR SUMMARY JUDGMENT

Plaintiff is a church who was renting the facilities of a public charter school. Idaho state law allows for public charter schools to receive state-backed building bonds, and to receive final bond approval, the charter school was forced to terminate its lease with Plaintiff. The bond issuer relied on the Idaho Constitution's "sectarian appropriations prohibited" provision in requiring the charter school to terminate its lease with the Plaintiff church. This civil rights lawsuit challenges this application of the "sectarian appropriations prohibited" provision as a violation of federal constitutional rights. Plaintiff now, by and through counsel, respectfully move for Summary Judgment pursuant to Fed. R. Civ. P. 56(a).

## MEMORANDUM OF POINTS AND AUTHORITIES

This lawsuit asks whether the U.S. Constitution's Free Exercise, Establishment, and Free Speech Clauses permit Defendants to refuse to allow a church to rent charter school facilities when the school is receiving a state-backed building bond. In denying the Church an opportunity to continue its lease agreement with a charter school, the Idaho Constitution's "sectarian appropriations prohibited" provision was relied upon.[1] The question here is whether this application of this state constitutional provision is barred by the U.S. Constitution. In light of a number of decisions by the U.S. Supreme Court, the resounding answer is "yes."

---

[1] Article IX, § 5 of the Idaho Constitution reads, in pertinent part, as follows:

> Neither the legislature nor any county, city, town, township, school district, or other public corporation, shall ever make any appropriation, or pay from any public fund or moneys whatever, anything in aid of any church or sectarian or religious society, or for any sectarian or religious purpose, or to help support or sustain any school, academy, seminary, college, university or other literary or scientific institution, controlled by any church, sectarian or religious denomination whatsoever.

## UNDISPUTED AND STIPULATED FACTS MATERIAL TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. The Parties and the Plaintiff Church's Lease Agreement

The Plaintiff church is associated with Truth Family Bible Church, Inc. ("Church"), an Idaho nonprofit corporation which was organized for religious purposes. Statement of Undisputed and Stipulated Material Facts ("SUSMF") p. 2, ¶ 1. Idaho Housing and Finance Association ("IHFA") is an independent public body corporate and politic created under Chapter 62, Title 67 of the Idaho Code. SUSMF p. 2, ¶ 2. Sage International School Middleton, LLC ("Sage") is a nonprofit corporation formed to operate as a public charter school pursuant to Idaho Code § 33-5204. The Church entered into a lease agreement to rent Sage's facilities on July 27, 2022. SUSMF, p. 2, ¶¶ 4-5. The Church and Sage enjoyed a positive relationship without conflict. SUSMF, p. 2, ¶ 6.

### II. Applicable Idaho State Law

The Public Charter School Facilities Program is codified at Idaho Code § 33-5218(1). This program assists qualifying charter schools in obtaining favorable financing on bonds for facility improvements and construction. SUSMF p. 3, ¶ 7. According to Idaho Code § 33-5218(2), a public charter school seeking to use the public charter school facilities program must receive approval from IHFA pursuant to requirements for issuance of nonprofit facility bonds and to satisfaction of the criteria set forth in the statute. SUSMF p. 3, ¶ 9. Sage applied for a building bond under this statute on or about July 28, 2023. SUSMF p. 3, ¶ 9.

### III. Lease Termination

Sage terminated its lease with the Church on January 17, 2024. SUSMF p. 5, ¶ 16. The lease was terminated because of the religious nature of the Church. SUSMF p. 4, ¶¶ 12-14. Specifically, IHFA's bond counsel flagged the Church's lease as a problem because the Church

was using the school for worship services, and that this was likely not permitted under Idaho's Constitution. SUSMF pp. 3-4, ¶¶ 12-13. In making the decision to terminate the Church's lease, the Defendants rely on an Idaho Supreme Court case upholding the utilization of Article IX, Section 5 of the Idaho Constitution[2] and that "Article IX, Section 5 of the Idaho Constitution has not been ruled unconstitutional." SUSMF pp. 3-4, ¶ 12; Yorgason Exhibit 1. A private music school who also rented Sage's facilities was not flagged as a problem. SUSMF pp. 3-4, ¶ 12.

The Church had to quickly find a new lease for its Sunday services. SUSMF p. 5, ¶ 18. But for the application of Idaho's "sectarian appropriations prohibited" provision, the Church's lease would not have been terminated. SUSMF pp. 3-5, ¶¶ 12-15.

## STANDARD OF REVIEW

Federal Rules of Civil Procedure, Rule 56 allows for summary judgment as a matter of law in the absence of a dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). No material facts are in dispute.

## LEGAL ARGUMENT

The First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment, does not allow the government to discriminate against religion or give preference to the secular. In relevant part, the First Amendment states, "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech." Defendants here take aim at religion in violation of the First Amendment by applying Idaho's "sectarian appropriations prohibited" provision to exclude a church from an opportunity to rent a public charter school facility while allowing non-religious groups to do so. As demonstrated below, this decision to prohibit a church from renting from a public charter

---

[2] *Board of County Comm'rs v. Idaho Health Facilities Auth*., 96 Idaho 498 (1974).

school who receives a state-backed building bond is clear violation of the Free Exercise, Establishment, and Free Speech Clauses to the First Amendment. Combined with no genuine issues of material fact, this Court should grant summary judgment in favor of the Plaintiff on all claims under Fed. R. Civ. P. 56(c).

**I. Excluding a church from renting a public facility violates the Free Exercise Clause.**

Eliminating an otherwise available opportunity for a church or other religious entity "solely because it is a [religious entity] is odious to our Constitution." *Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. 449, 467 (2017). The Free Exercise Clause is violated when, sans a compelling interest, a religious person or entity must choose "between following the precepts of her religion and forfeiting benefits." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *see also*, *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.,* 82 F.4th 664, 694 (2023) (holding that a free exercise violation occurred where a school district treated secular groups more favorably than religious ones). This reasoning rightfully led to the conclusion that when religious schools and parents are excluded from public benefits solely because of religious character, the Free Exercise Clause is offended. *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 476 (2020); *see also*, *Trinity Lutheran* at 462 (emphasizing that a policy discriminating against an otherwise eligible religious entity "solely because of their religious character . . . imposes a penalty on the free exercise of religion").

Utilizing a state nonsectarian requirement, otherwise known as a Blaine amendment, does not suddenly validate what would otherwise violate the Free Exercise Clause. Government exclusion of public aid to a religious entity, let alone a more tangential benefit such as in this case where a church simply wants to rent a charter school's facilities, demonstrates an open hostility toward religion and communicates the government's preference for the nonreligious. This type of

hostility toward religion is inconsistent with what the Free Exercise requires. *Masterpiece Cakeshop Ltd. v. Colo. Civil Rights Comm.,* 584 U.S. 617, 639-40 (2018). This is a concept the U.S. Supreme Court and the Ninth Circuit have stated time and time again.

The Blaine Amendment was “born of bigotry” and “arose at a time of pervasive hostility to the Catholic Church and to Catholics in general”; many of its state counterparts have a similarly “shameful pedigree.” *Espinoza* at 482 (citing *Mitchell v. Helms*, 530 U.S. 793, 828-29 (2000) (plurality opinion)); Jeffries & Ryan, A Political History of the Establishment Clause, 100 Mich. L. Rev. 279, 301–305 (2001). “The no-aid provisions of the 19th century hardly evince a tradition that should inform our understanding of the Free Exercise Clause.” *Id.*

In *Trinity Lutheran*, the Supreme Court held that the state of Missouri’s policy of “categorically disqualifying churches and other religious organizations from receiving grants under its playground resurfacing program” violated the Free Exercise Clause. In this case, the state of Missouri relied on its state constitution’s provision that is similar to Idaho’s “sectarian appropriations prohibited” provision to disqualify the plaintiff church. The church in this case was put to the choice between being a church and receiving a government benefit, and the law at issue imposed a penalty on the free exercise of religion that must be subjected to the most rigorous scrutiny.” *Trinity Lutheran*, 582 U.S. at 465-66 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)).

Shortly thereafter, the Supreme Court provided a similar interpretation in *Espinoza*. In that case, the state of Montana prevented parents from using a state tuition assistance program at a religious school because the state relied on a clause in the state constitution which forbade aid to a school controlled by a church, sect, or denomination.” *Espinoza* at 467-68. The Supreme

Court stated that "[p]lacing such a condition on benefits or privileges 'inevitably deters or discourages the exercise of First Amendment rights.'" *Id.* at 478.

In *Carson v. Makin*, 596 U.S. 767 (2022), the Supreme Court yet again did not allow the state of Maine to utilize its state constitution's prohibition to provide sectarian appropriations to deny parents the use of a tuition assistance program at a religious school. Conditioning a benefit on the basis of religious character penalizes the free exercise of religion. *Id.* at 780.

Most recently, the Ninth Circuit declared that using California's nonsectarian requirement to exclude religious schools from contracting with the state to provide special education benefits was an unconstitutional burden on the free exercise of religion. *Loffman v. California Dep't of Educ.,* No. 23-55714, 2024 WL 4586970 (9th Cir. Oct. 28, 2024). The Ninth Circuit specifically reiterated that applying the nonsectarian requirement in this way violated free exercise rights. *Id.* at *15.

*Trinity Lutheran, Espinoza, Carson*, and *Loffman* all demonstrate that the utilization of a nonsectarian aid provision to discriminate against the religious from receiving government aid is a free exercise violation. In the case of Truth Family Bible Church, this similar application is even more concerning because no aid was ever to be used by or at the church. The aid is simply going to a charter school who has chosen to rent their facilities to a church. This exclusion does not advance even a legitimate, much less compelling, government interest.

Only a state interest of the highest order can justify a policy that discriminates against religion. *Trinity Lutheran*, 582 U.S. at 466; *see also*, *Lukumi*, 508 U.S. at 531-32 (holding that a law that is not neutral as to religion must be justified by a compelling government interest if it impairs the free exercise of religion).

In this case, no justification is given other than the existence of Idaho state case precedent from the 1970s that preceded any of the above decisions. Whatever the correctness of this case a half-century ago, it is quite clearly inconsistent with the U.S. Supreme Court's jurisprudence of the last thirty years. Without a compelling interest, Truth Family Bible Church's free exercise rights may not be burdened in this way.

## II. Favoring non-churches over a church violates the Establishment Clause.

The government cannot rest on a mistaken view that it has a duty to ferret out and suppress religious observances as it allows comparable secular ones. *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 543-44 (2022). The Establishment Clause "prevents a State from enacting laws that have the purpose or effect of advancing or inhibiting religion." *Zelman v. Simmons-Harris,* 536 U.S. 639, 648-49 (2002); *see also*, *Everson v. Bd. of Educ.,* 330 U.S. 1, 18 (1947) (The law "requires the state to be neutral in its relations with groups of religious believers and non-believers; it does not require the state to be their adversary."); *Widmar v. Vincent,* 454 U.S. 263, 274-75 (1981) ("If the Establishment Clause barred the extension of general benefits to religious groups, a church could not be protected by the police and fire departments, or have its public sidewalk kept in repair."). Weaponizing the Establishment Clause or an anti-establishment interest via the Blaine amendment in order to enforce strict separation of government and religion indicates to society that religion is dangerous and should be devalued, which flies in the face of the requirement to be neutral toward religion. "Historical evidence suggests that many advocates for this separationist view were originally motivated by hostility toward certain disfavored religions." *Espinoza*, 591 U.S. at 494 (Justice Thomas concurring) (citing P. Hamburger, Separation of Church and State 391-454 (2002)).

Singling out Truth Family Bible Church and treating it differently than non-religious groups that want to rent a charter school facility is not neutral towards religion. Defendants demonstrated a hostility toward religion and became an adversary of Truth Family Bible Church by terminating their lease agreement while allowing secular groups to remain lessees. "The Constitution neither mandates nor tolerates that kind of discrimination." *Kennedy* at 544.

### III. Excluding a church is viewpoint discrimination in violation of the Free Speech Clause.

Religion is a viewpoint that cannot be discriminated against under the First Amendment's Free Speech Clause. When government discriminates against a group's viewpoint, "vital First Amendment speech principles are at stake." *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 835 (1995). "[R]eligion may be a vast area of inquiry, but it also provides . . . a specific premise, a perspective, a standpoint from which a variety of subjects may be discussed and considered." *Id.* at 831. *See also*, *Lamb's Chapel v. Center Moriches Sch. Dist.,* 508 U.S. 384, 394 (1993) (holding a government policy cannot, either on its face, or in its application, target religious perspectives on an otherwise includable subject permitted in the forum). In *Lamb's Chapel*, the school district perpetrated viewpoint discrimination by refusing to allow a religious group to display a religious film at their facilities but allowing similar secular groups to do so. No state interest derived from a state constitution could ever outweigh free speech interests protected by the First Amendment. *Widmar* at 275-76.

Similarly, Truth Family Bible Church is not allowed to rent from a public charter school, but a secular musical group is permitted. As a church that also utilizes music for its services, there is no explanation for its exclusion other than discrimination against the religious viewpoint of the Plaintiff. "When the government targets not subject matter, but particular views taken by

speakers on a subject, the violation of the First Amendment is" particularly "blatant." *Rosenberger,* 515 U.S. at 829.

Discrimination based on the substantive content of speech or the message it conveys triggers strict judicial scrutiny and must be narrowly tailored to a compelling government interest. There is no government interest whatsoever, let alone a compelling one, to discriminate against religious viewpoints as Defendants have done against Truth Family Bible Church.

**CONCLUSION**

Defendants unlawfully disadvantaged a church based on its religious character, thereby burdening their free exercise of religion and violating the religious neutrality required by the First Amendment. Without a compelling interest, the Defendants' application of the "sectarian appropriations prohibited" provision of the Idaho Constitution violates the U.S. Constitution. The Church respectfully requests that summary judgement be granted in its favor.

Respectfully submitted this 31st day of January 2025,

/s/ Katherine I. Hartley
Katherine I. Hartley
PACIFIC JUSTICE INSTITUTE
P.O. Box 2131
Coeur D'Alene, Idaho 83816
Office: 858-945-6924
khartley@pji.org

*Attorney for Plaintiff*