UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRUTH FAMILY BIBLE CHURCH MIDDLETON,<br><br>                    Plaintiff,<br><br>v.<br><br>IDAHO HOUSING AND FINANCE ASSOCIATION, an Idaho nonprofit corporation; SAGE INTERNATIONAL NETWORK OF SCHOOLS, an Idaho public charter school,<br><br>                    Defendants. | Case No. 1:24-cv-00206-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff Truth Family Bible Church Middleton's ("Truth Family") Motion for Summary Judgment (Dkt. 23) and Defendant Idaho Housing and Finance Association's ("IHFA") Cross-Motion for Summary Judgment (Dkt. 26). On July 29, 2025, the Court held oral argument and took the Motions under advisement. Upon review, and for the reasons set forth below, the Court GRANTS Truth Family's Motion for Summary Judgment and DENIES IHFA's Motion for Summary Judgment.

## II. BACKGROUND

Beginning in July 2022, Truth Family had a month-to-month lease with Sage International Network of Schools ("SAGE"), a public charter school, where they would pay rent for the use of the school's gymnasium on Sundays for church services. In July

2023, SAGE submitted an application to IHFA to participate in the Public Charter School Facilities Program ("Program"). If SAGE was approved to participate in the Program, it could receive bonds for facility improvements and construction.

IHFA reviewed SAGE's application and indicated the lease with Truth Family could be a problem because the bond proceeds could not be used for religious purposes under Article IX Section 5 of the Idaho Constitution (otherwise known as the "Blaine Amendment").[1] It is unclear whether IHFA mandated the termination of the lease as a condition to receiving the bonds or whether they simply indicated it could be an issue. IHFA and SAGE engaged in several conversations with each other and SAGE consulted with its own counsel. Ultimately, SAGE decided to terminate the lease in order to proceed with bond financing and sent a letter to Truth Family in January 2024 terminating the lease.[2]

SAGE received the financing, and Truth Family sought out a new lease at a different public school. On April 19, 2024, Truth Family filed the instant Complaint, bringing claims of constitutional violations against both IHFA and SAGE. Shortly thereafter, in June 2024, the State of Idaho moved to intervene in the case (Dkt. 9), which the Court ultimately granted (Dkt. 15).

On February 3, 2025, Truth Family filed its Motion for Summary Judgement. Dkt.

---

[1] The Court presumes IHFA came to this conclusion because the bond proceeds would be used to improve school facilities, and Truth Family would incidentally benefit from the use of those improved facilities.

[2] IHFA's position is that the lease could have been renewed once SAGE received the funds, and furthermore, that SAGE can enter into a new lease with Truth Family at any time moving forward because SAGE has already received the funds.

MEMORANDUM DECISION AND ORDER - 2

23. SAGE filed a notice of non-opposition. Dkt. 24. The State of Idaho filed a brief arguing the Court should not reach the constitutionality of the Blaine Amendment because it is not applicable in cases where a religious institution is not directly receiving aid. *See generally* Dkt. 25. IHFA filed its Cross-Motion for Summary Judgment on March 21, 2025. Dkt. 26. The Court held oral argument on July 29, 2025. The motions are now ripe for review.

### III. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not weigh the evidence and determine the truth of the matter but rather determines whether there is a genuine issue for trial. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.* The non-moving party must only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* The non-moving party cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment but must set forth specific facts, supported by evidence, with reasonable particularity that preclude summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

#### B. 42 U.S.C. § 1983

42 U.S.C. § 1983 "allows private parties to sue state actors who violate their 'rights' under 'the Constitution and laws' of the United States." *Medina v. Planned Parenthood*

MEMORANDUM DECISION AND ORDER - 3

*South Atlantic*, 145 S. Ct. 2219, 2227 (2025). A state actor includes either a government official or entity, or a private party who is acting with sufficient state authority. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012). There are three clauses of the United States Constitution under which Truth Family has claimed its rights have been violated: the free exercise clause, the establishment clause, and the free speech clause. Dkt. 1, at 4–6.

    1. *Free Exercise Clause*

The First Amendment to the United States Constitution forbids Congress from making any law which prohibits the free exercise of religion, and that Clause is applicable to the States under the Fourteenth Amendment. *Kennedy v. Bremerton School District*, 597 U.S. 507, 524 (2022). The Free Exercise Clause can be violated when "a government entity has burdened [a person's] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Id.* at 525 (citing *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 879–81 (1990)). Where a plaintiff makes such a showing, the First Amendment has been violated unless the governmental action can satisfy strict scrutiny. Or, in other words, if the government entity can show the action was justified by a compelling state interest and was narrowly tailored to achieving that interest. *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993).

    2. *Establishment Clause*

Again, under the First Amendment, Congress cannot make a law "respecting an establishment of religion . . . ." U.S. Const. amend. I. The Court must interpret this clause "by reference to historical practices and understandings." *Town of Greece, N.Y. v.*

*Galloway*, 572 U.S. 565, 576 (2014) (cleaned up). A government aid program which advances *or inhibits* religion violates the Establishment Clause.³ *Zelman v. Simmons-Harris*, 536 U.S. 639, 640 (2002). On the other hand, where a program "is neutral with respect to religion and provides assistance directly to a broad class of citizens who, in turn, direct government aid to religious schools wholly as a result of their own genuine and independent choice," there is no violation of the Establishment Clause. *Id.*

   3. *Free Speech Clause*

The First Amendment prohibits any law which "abridges the freedom of speech." U.S. Const. amend. I. This clause does not provide an absolute right to speak, but the government's ability to regulate speech varies with the forum in which the speech takes place. The government can impose reasonable restrictions on the time, place, or manner of speech in a public forum, which includes schools that the public is allowed to use after hours, if those restrictions are: (1) content neutral, (2) narrowly tailored to serve a significant government interest, and (3) leave open alternative channels of communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Most importantly here, when a public school permits the public to use its facilities, refusing to allow a religious organization to use the school solely because it will be sharing a religious perspective

---

³ Such a principal is in line with historical practices and understanding. *See Town of Greece*, 572 U.S. at 576 ("The committees concluded that the office posed no threat of an establishment because . . . no faith was *excluded* by law, nor any favored . . . .") (emphasis added)). Relatedly, IHFA argues the legal standard set forth in *Zelman* is somehow flawed because it incorporates language set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), which was expressly overruled in *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022). However, *Kennedy* specifically emphasized that the Establishment Clause should be interpreted using historical practices and understandings, and inhibiting religion has historically been a violation of the Establishment Clause, as noted in *Town of Greece*.

MEMORANDUM DECISION AND ORDER - 5

violates these principles, and in turn, the Free Speech Clause. *See Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 393–94 (1993).

## IV. DISCUSSION

To begin, both IHFA and SAGE are state actors, and no party argues otherwise. The IHFA is delegated authority by the state legislature to issue bonds as a nonprofit corporation, and SAGE is a public school governed by the state. This case is unique in that the state was never providing funds directly to a religious organization, namely Truth Family. However, IHFA and SAGE both deprived Truth Family of its constitutional rights by terminating its lease solely for its status as a religious organization. While the Court understands the motivations by both IHFA and SAGE were to comply with state law, it was likely a lapse in judgment by IHFA to determine the Blaine Amendment was implicated when Truth Family would have only incidentally benefitted from bond-improved facilities when the bond proceeds were not being given directly to a religious organization.

IHFA and SAGE's motivations for terminating Truth Family's lease, whether reasonable or not, were still a violation of Truth Family's constitutional rights for the reasons set forth below.

### A. Free Exercise

It is proper to grant summary judgment on this claim to Truth Family, as Defendants cannot genuinely dispute that the termination of the lease happened under a policy that was generally applicable or otherwise neutral. Truth Family's sincere religious practice of meeting together was inhibited when their lease was terminated, and it was terminated

solely based on it being a religious organization. A secular music group who also had a lease during this time was able to continue with its lease, and the lease was not otherwise flagged as presenting a potential issue. In short, IHFA did not single out Truth Family's lease in a way that was neutral or generally applicable, and SAGE did not terminate Truth Family's lease in a manner that was neutral or generally applicable. Therefore, Truth Family met its burden of showing there was a violation of the Free Exercise Clause here.

The burden then shifts to IHFA and SAGE to show their decision to terminate the lease was justified by a compelling state interest and was narrowly tailored to achieving that interest. IHFA and SAGE failed to provide any evidence that they have satisfied strict scrutiny. SAGE did not oppose Truth Family's Motion for Summary Judgment, welcoming "judicial guidance" on these difficult questions. Dkt. 24, at 2. IHFA only stated they believed they were following precedent, specifically *Board of County Commissioners of Twin Falls County v. Idaho Health Facilities Authority*, 531 P.2d 588 (Idaho 1974), where the Idaho Supreme Court found bond proceeds could not be used to finance facilities for a religious hospital. Dkt. 26-1, at 5. Even if the Court were to assume IHFA is using *Idaho Health Facilities* to provide a compelling state interest, it is unclear what reasoning from that case would be the proposed compelling state interest, and it certainly does not address how the termination of the lease in this case was narrowly tailored to serving that interest.

*Idaho Health Facilities* dealt with bond proceeds going directly to a religious organization, whereas here the proceeds would be going to a public charter school, who happens to rent their facilities for fair market value on the weekends to multiple groups, one of which is a church. To refuse the issuance of bonds to anyone who contracts with a

religious organization to use their facilities is likely not narrowly tailored to any government interest that could possibly be served by the Blaine Amendment. But even if it was, IHFA and SAGE failed to provide any evidence of such and have, therefore, not met their burden. Truth Family's Motion as to their Free Exercise Claim is GRANTED.

### B. Establishment Clause

The facts of this case do not make the Court's decision on an Establishment Clause violation very difficult. There is no dispute between the parties that SAGE terminated Truth Family's lease of its facilities solely because it was a religious organization. It maintained a similar lease with a secular music group. There is nothing neutral about this decision. Accordingly, SAGE violated the Establishment Clause when choosing to terminate the lease with Truth Family.

The Court briefly wants to address IHFA's arguments related to the Establishment Clause. First, IHFA argues the Establishment Clause was not violated because religious observance was not made compulsory. This completely ignores precedent which indicates the government is still indicating a preference for a certain religion or non-religion when it excludes another. When Truth Family was prevented from using facilities to participate in worship services, that indicated IHFA and SAGE's preference for non-religion in violation of the Establishment Clause.

IHFA also ping pongs in its use of caselaw to support its arguments, seemingly contradicting itself. For example, it argues Truth Family identified "no cases where an

Establishment Clause violation was found under circumstances like those presented here."[4] Dkt. 26-1, at 6. But then it set forth the cases Truth Family provided like *Zelman*, and *Zelman* specifically found there was no violation of the Establishment Clause because a financial assistance program was used neutrally between students attending both religious and nonreligious private schools. Thus, it would follow that here, where a government aid program was *not* neutral towards a religious organization (via an intermediary), there would be a violation of the Establishment Clause.

And after arguing that *Zelman* was not informative in this case, IHFA cited *Mitchell v. Helms*, 530 U.S. 793 (2000), where the Supreme Court found there was no violation of the Establishment Clause because school-aid programs were provided neutrally to both secular and religious schools, to support its assertion that "none of the cases advanced by the Church support a valid Establishment Clause claim under the facts of this case." *Id.* at 795; Dkt. 28, at 3. Again, the Court fails to see how *Mitchell* would not support Truth Family's argument that an aid program which did not neutrally provide aid to SAGE solely because it contracted with a religious organization would not violate the principles set forth in these cases. Overall, there is a very clear violation of the Establishment Clause here, and Plaintiff's Motion is GRANTED on its Establishment Clause claim.

---

[4] The Court does not wish to wholly take IHFA's arguments out of context. It recognizes that many of the cases cited in support of Truth Family's arguments are cases in which aid was being provided directly to a religious organization. However, these cases are perhaps more persuasive in this case where aid was never being provided to a religious organization, but Truth Family was, essentially, an ancillary victim of a bond program that would not provide aid to an organization that even contracts with a religious organization. Again, the Court is not convinced IHFA was correct when it believed the Blaine Amendment was implicated here in the first place, but Truth Family's rights were still violated.

### C. Free Speech Clause

The Court's decision as it relates to the Free Speech Clause is as straightforward as its decision relating to the Establishment Clause. SAGE allows the public to use its facilities after hours through rental agreements. That makes SAGE's facilities a public forum. When SAGE chose to terminate the lease with Truth Family, it effectively stifled Truth Family's speech on the sole basis that it was a religious message because it could preclude SAGE from receiving a bond. This is a nearly 1:1 comparable situation to what occurred in *Lamb's Chapel*. While the school in *Lamb's Chapel* was more concerned about moral considerations, public unrest, and potential violence, the Supreme Court did not base its decision on the school's underlying motivation for restricting the speech. 508 U.S. at 385. It simply concluded that the school restricted speech solely due to its religious nature. *Id.* SAGE terminated the lease solely due to Truth Family's status as a religious organization. While the motivation might have been money rather than a direct issue with the message itself, the result is the same: Truth Family could no longer spread its message at the school because it was a religious one. This is a violation of the Free Speech Clause, and summary judgment is proper.[5]

---

[5] IHFA argues the Free Speech Clause does not provide the proper grounds for a decision in this case, citing several cases where both free exercise and free speech causes of action were brought together in challenges to government aid policies but where the Free Speech claims were ultimately dismissed. Dkt. 26-1, at 8. However, those cases were often determining the constitutionality of the law itself, not the law as it was applied to a certain set of facts. After briefing from the parties, the Court will not determine the constitutionality of the provision of the Idaho Constitution at issue here. Truth Family did not bring a facial or as-applied challenge to the Blaine Amendment or the bond program or anything like that; it challenged SAGE and IHFA's *implementation* as unconstitutional. Additionally, because Truth Family itself was not seeking the bond, the Court finds the State of Idaho's brief particularly persuasive in that the provision, minus the parties' actions in this case, might not have even been applicable here. Thus, the Court will not reach the constitutionality of the Blaine Amendment in its decision today, and the cases which IHFA cited that dismissed free speech challenges are of limited applicability here.

## V. CONCLUSION

Defendants SAGE does not deny it terminated Truth Family's lease solely because it was a church, and IHFA does not deny it, at a bare minimum, suggested such course of action. Defendants also do not dispute they were both worried about violating the Blaine Amendment by leasing to a religious organization while in the process of applying for, and obtaining, a bond. But Defendants were wrong. The decision violated Truth Family's rights under the First Amendment, as it was not neutral, generally applicable, and treated it differently solely because it was a religious organization. Thus, summary judgment is proper as to all of Truth Family's claims.

## VI. ORDER

1. Truth Family's Motion for Summary Judgment (Dkt. 23) is **GRANTED**.

2. Idaho Housing and Finance Association's Cross Motion for Summary Judgment (Dkt. 26) is **DENIED**.

3. The Parties will submit a proposed judgment for the Court's review and signature.

DATED: September 22, 2025

David C. Nye
Chief U.S. District Court Judge